UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EVON MARTIN *et al*;

        Plaintiffs,

    v.

ENDURANCE WARRANTY SERVICES LLC
*et al*;

        Defendants.

Case No.:     1:26-cv-01334

Judge:     Hon. Charles P. Kocoras

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

NOW COME Plaintiffs EVON MARTIN et al. ("Plaintiffs"), by and through their undersigned counsel, responding in opposition to Defendant ENDURANCE WARRANTY SERVICES LLC's Motion to Dismiss, and in support thereof state as follows:

## I.  INTRODUCTION

In its Motion to Dismiss ("MTD") (Dkt. #11-12), Defendant and prolific "spamvertiser" Endurance Warranty Services LLC ("Endurance") attempts an *ad hominem* attack by calling Plaintiffs Evon Martin *et al* ("Martin" or "Plaintiffs") "professional email collectors."  However, the term "professional" is not a "dirty word" and it "implies experience, not expertise."  A person whose rights have been repeatedly violated should be able to sue every bad actor who violated those rights.  *Murray v. GMAC Mortgage Corp*., 434 F.3d 948, 954 (7th Cir. 2006).  Here, Endurance is the bad actor who violated Martin's rights – hundreds and hundreds of times.

Endurance also complains that the damages Martin seeks for Endurance's criminal conduct constitutes "sums greater than most people's annual incomes."  MTD at *1.  Indeed, Endurance claims that Martin should have just ignored its conduct and "mov[ed] on with their lives."  *Id.* Unfortunately for Endurance, Martin elected to stand on their rights and hold it accountable for its

1

part in unlawful spamvertising, which costs American businesses and consumers as much as $71 billion annually[1] – more than most countries' annual revenue.[2]

Recognizing the harm caused by spam, the California Legislature enacted Business & Professions Code § 17529.5 ("Section 17529.5") to empower spam recipients like Martin to fight back against spamvertisers like Endurance. Section 17529.5 establishes several types of violations, imposes strict liability on advertisers for their affiliates' actions, sets liquidated damages at $1,000 per spam, and awards attorneys' fees to a prevailing spam recipient.

This lawsuit is about Endurance's relentless advertising of its vehicle service contracts ("VSCs") in more than 5,000 unlawful spams sent to more than 100 California residents. Martin alleges that **Endurance advertised in but did not send the spams**. Endurance conflates this important distinction in its MTD in a spurious attempt to undermine Martin's claims that rest on the fact that Martin (and probably even Endurance) does not know who actually sent the spams.

Endurance argues irrelevant matters such as whether Martin was deceived or tricked by the spams, ignores controlling case law, and attempts to minimize the clearly material violations alleged in the Complaint as mere "technical errors." Since the Court must accept as true the well-pleaded allegations of the complaint, Endurance's MTD must fail. *Ziklag IP LLC v. Amazon Web Services*, 776 F. Supp. 3d 745, 749 (N.D. Ill. 2025). But, if this Court is otherwise inclined to grant Endurance's MTD in whole or in part, then – given the policy of liberally permitting leave to amend, *Flores v. City of South Bend*, 997 F.3d 725, 734 (7th Cir. 2021) – Martin requests leave to amend to address any deficiencies in the Complaint.

## II. **DISCUSSION**

**A. Claims for Violations of Section 17529.5 are Not Claims for Fraud. Martin Need Not Allege or Prove That They Were Tricked or Deceived**

The California Legislature expressly authorized recipients of unlawful spam to bring legal action. Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii). In contrast to a common-law tort or fraud

---

[1] *Spam Costs $712 Per Employee Annually*, NETWORK COMPUTING, https://www.network computing.com/network-infrastructure/spam-costs-712-per-employee-annually (last visited March 11, 2026).
[2] *List of Countries By Government Budget*, WIKIPEDIA, https://en.wikipedia.org/wiki/List_of_ countries_by_government_budget (last visited March 11, 2026).

cause of action, **there is no requirement that a spam recipient allege that they were deceived, make a purchase, or prove reliance and actual damages in order to bring claims.** *Hypertouch Inc. v. ValueClick Inc.*, 192 Cal. App. 4th 805, 820 (2d Dist. 2011).[3]  Another California appellate court subsequently upheld *Hypertouch.  Balsam v. Trancos Inc.,* 203 Cal. App. 4th 1083, 1102 (1st Dist. 2012).  No California reviewing court has ruled otherwise.

Endurance's failure to cite *Hypertouch* and *Balsam* (two of only five published California Section 17529.5 cases) in its MTD is an obvious attempt to avoid well-established case law that fatally undermines its irrelevant arguments surrounding whether Martin was deceived or tricked by the instant spams.  *See also Asis Internet Services v. Vistaprint United States Inc.*, 617 F. Supp. 2d. 989, 993-94 (N.D. Cal. 2009).  *See also Wagner v. Spire Vision LLC et al*, No. C 13-04952 WHA, 2014 WL 889483 at *3 (N.D. Cal. Mar. 3, 2014) and *Smith v. Anastasia Inc.*, No. 3:14-cv-01685-H-MDD, 2014 U.S. Dist. LEXIS 190866, at *6-7 (S.D. Cal. Sep. 15, 2014), both noting that the great weight of district court and state court decisions have agreed that a showing of reliance is not necessary to avoid preemption.

Furthermore, the "reasonable person" standard in Section 17529.5 confirms that reliance is unnecessary; a "reasonable person" is just a construct, so it is impossible to use a "reasonable person" standard and still require a showing of actual reliance.

**B.**  **The Cases Supporting CAN-SPAM Act Preemption are Distinguishable**

Endurance repetitively conflates the terms "falsity" and "deception" with "fraud" in its arguments as to the scope of federal preemption of California's anti-spam law.

**1.  *The CAN-SPAM Act's Preemption Language***

The federal CAN-SPAM Act was supposed to create a national standard – a national standard for *truthful* spam.  But Congress expressly left it to the states to regulate *false or deceptive* spam.  The preemption language states:

> (1) In general
> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail

---

[3] Although Martin cannot bring claims under federal law, the CAN-SPAM Act similarly does not require allegations and proof of reliance or other elements of common law torts.  15 U.S.C. § 7704(2).

to send commercial messages, ***except to the extent that any such statute, regulation, or rule prohibits falsity or deception*** in any portion of a commercial electronic mail message or information attached thereto.

(2) State law not specific to electronic mail
This chapter shall not be construed to preempt the applicability of –
(A) State laws that are not specific to electronic mail, including State trespass, contract, or tort law; or
(B) other State laws to the extent that those laws relate to acts of ***fraud*** or computer crime.

15 U.S.C. § 7707(b) (emphasis added).

### 2. *Statutory Analysis*

Statutory analysis starts with the plain language of the statute. *United States v. Wagner*, 29 F.3d 264, 266 (7th Cir. 1994). The use of different words indicates different meanings. *Central States, Southeast & Southwest Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 941 (7th Cir. 2000). "The Congressional intent to preempt state law should be the ultimate touchstone in our preemption analysis. [ ] Thus, we 'must in the first instance focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.'" *Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1430 (7th Cir. 1996) (citation omitted).

Here, the exception-to-preemption language in 15 U.S.C. § 7707(b)(1) clearly states that **state spam laws that prohibit *false or deceptive* spamming are not preempted.** Congress did not use the term "fraud" in (b)(1) as to state spam laws, even though it did use the term "fraud" in (b)(2) as to state laws not specific to spam. Accordingly, interpreting the phrase "falsity or deception" in (b)(1) to mean fraud, when (b)(2) actually uses the word fraud, would contravene the principle that when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended. *Wagner, Central States, Travel All Over the World*, *supra*.

### 3. *Preemption is Disfavored as to Laws Regulating Advertising*

In 2008, the U.S. Supreme Court considered the question of federal preemption (by the Federal Cigarette Labeling and Advertising Act) of state advertising laws (such as the Maine Unfair Trade Practices Act). *Altria Group Inc. v. Good*, 555 U.S. 70, 91 (2008). The Court

explained that **since advertising is traditionally regulated by the state, the assumption should be that federal laws regulating that field do not supersede state laws.** *Id*. at 77.  In fact, the Court explicitly stated that "when the text of a pre-emption clause is susceptible of more than one plausible reading, courts ordinarily accept the reading that disfavors pre-emption." *Id.  See also Meyer v. United Airlines Inc.*, No. 08 C 0599, 2009 U.S. Dist. LEXIS 11114, at *14 (N.D. Ill. Feb. 15, 2009) (holding that ambiguous preemption language/intent and actions within the traditional police powers of the states both counsel against preemption).

This Court should follow the guidance of the U.S. Supreme Court and courts of the Seventh Circuit.  If there is any way for this Court to find – given the instant facts – that Martin's claims under Section 17529.5 are *not* preempted, it should do so.

### 4. *Endurance Over-Relies on* Omega *and* Gordon*, Two Circuit Cases Based on Significantly Different Facts*

Endurance dwells on two non-binding cases from other circuits in its MTD at *6-7 for the proposition that the CAN-SPAM Act preempts state anti-spam laws except for "traditionally tortious or wrongful conduct."  However, Martin does allege tortious conduct – Endurance's violations of Section 17529.5 are torts.[4]  The addition of the word "traditionally" does not turn "torts" into "common-law fraud," particularly in light of *Hypertouch*, which postdated *Gordon*. Moreover, these two circuit cases, neither of which arise from California's anti-spam law, are based on significantly different facts and the resulting opinions are not applicable here.

#### a. Omega World Travel Inc. v. Mummagraphics Inc., 469 F.3d 348, 352 (4th Cir. 2006)

Endurance misplaces its reliance on *Omega*, which has little or no application here.

First, in *Omega*, the Fourth Circuit was considering Oklahoma's anti-spam law, not California law, and unlike Section 17529.5 which uses the term *falsity*, the Oklahoma statute actually uses the term "*fraudulent* electronic mail message."  15 OK Stat. § 776.1(D).

---

[4] "A 'tort' has been defined broadly as a 'civil wrong, other than breach of contract, for which the court will provide a remedy in the form of an action for damages.'" *Ball v. City of Indianapolis*, 760 F.3d 636, 644 (7th Cir. 2014) (citation omitted).

Second, in the *Omega* spams, **Mummagraphics (or any other recipient) could easily identify the actual sender,** which happened to also be the advertiser – Omega. The court found that "[t]he e-mails at issue were chock full of methods to 'identify, locate, or respond to' the *sender* [ ]." 469 F.3d at 351. In fact, the emails' headers included a reference to cruise.com, a dba of Omega, as the *sending* organization. *Id.* at 357. But here, unlike in *Omega*, Endurance was *not* the sender and the sending domains did not belong to Endurance. Rather, the emails at issue here were sent by third parties whom Martin cannot identify using the registration data for the sending domain names in the Whois database, or any other database of which Martin is aware. Complaint at ¶¶ 110-124.

Third, the only alleged falsity in the *Omega* spams was that the email headers included a domain name that had nothing to do with Omega and a nonfunctional email address. 469 F.3d at 351. The court repeatedly and appropriately refers to these issues as "immaterial errors," "immaterial misrepresentations," "bare errors," and "isolated errors," and the court noted that state laws providing a cause of action for "bare error" in commercial email would frustrate Congress' goal of a "national standard." *Id*. at 353-55, 359. **There were no allegations that the *Omega* spams had multiple, *material* problems like the spams in this Action:** sending domain names that are untraceable to the actual senders, deliberately forged headers, use of third parties' domain names without permission, and false and misleading Subject Lines.

### b. *Gordon v. Virtumundo Inc.*, 575 F.3d 1040 (9th Cir. 2009)

*Gordon* is similarly inapplicable to this Action.

First, in *Gordon,* the Ninth Circuit was analyzing Washington law, not California law, and concluded that the plaintiff's claims were preempted because **Washington's entire anti-spam law was overbroad and "purport[ed] to regulate a vast array of *non*-deceptive acts and practices,"** *not* because the plaintiff did not allege reliance and damages. *Id.* at 1059 (emphasis added). *C.f. Asis Internet Services v. SubscriberBase Inc.*, No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645 at *31-32 (N.D. Cal. Apr. 1, 2010). In contrast, Section 17529.5 is limited to falsity, forgery, misrepresentations, and misleading content.

Second, the *Gordon* court engages in a lengthy discussion of legal principles but when the court finally addresses the facts before it, it appears that the *Gordon* plaintiff – unlike Martin, *see* Complaint at ¶¶ 11, 28-29, 110-127 – conceded that **the spams' sending domain names were properly registered and traceable to the actual sender through Whois queries.** Indeed, the only falsity or deception that the *Gordon* plaintiff attempted to allege to avoid preemption was that the headers were supposedly deceptive and misrepresented the actual sender's identity *because* the spam recipient had to review the message/content or do a Whois query to ascertain the actual sender's identity, and that "extra step" violated Washington's anti-spam law. 575 F.3d at 1058, 1064. **To be clear, that "extra step" of conducting a simple Whois query is what the *Gordon* court found to be immaterial error, resulting in a preemption order.** Here, Martin does not object to querying the Whois database to determine if a spam's sending domain name is traceable to the actual sender. Indeed, the Complaint makes it abundantly clear that Martin already performed those Whois queries.

Third, *Gordon* states that one of the public policies behind the the CAN-SPAM Act was preventing emails that mislead consumers about their source or content. *Id.* at 1047. Here, Martin cannot identify the "source" – the actual senders – of the Endurance spams. Complaint at ¶¶ 110-127. **The misrepresentations in these emails are precisely the type of emails that Congress sought to prohibit.** Martin does not (cannot) bring claims under the CAN-SPAM Act, but since false headers and falsely-registered sending domain names are *felonies* under the CAN-SPAM Act, 18 U.S.C. § 1037(a)(4), (b) – the very same federal law that Endurance argues preempts Martin's claims – then surely such domain names materially violate Section 17529.5(a)(2) too, especially if the headers are forged to show that third-parties sent the spams.

---

For all of these reasons, *Omega* and *Gordon* are distinguishable and have no relevance to Martin's claims in this Action.

### 5. *California Cases After Omega and Gordon Find Against Preemption*

Most California federal and state courts reject Endurance's argument that *Omega* and *Gordon* support preemption of claims like Martin's as to untraceable sending domain names.

Martin concedes that in *Asis Internet Services v. Member Source Media LLC*, No. C-08-1321 EMC, 2010 U.S. Dist. LEXIS 47865 (N.D. Cal. Apr. 20, 2010); the court ruled at *12-14 that sending domain names that were not traceable to the actual sender were not materially false and so the plaintiff's claims were preempted. MTD at *7-8. However, *Member Source Media* also ruled that **the plaintiff's Subject Line claims were *not* preempted.** *Id.* at *15-16.

In *Internet Services v. Consumerbargaingiveaways LLC*, 622 F. Supp. 2d 935, 942-944 (N.D. Cal. 2009), the court went into great detail about the falsity vs. fraud language and "fraudulent or deceptive" language in the CAN-SPAM Act, and why "deceptive" in the CAN-SPAM Act refers to the FTC Act rather than common-law fraud or the tort of deception.

*See also Asis Internet Services v. SubscriberBase Inc.*, No. 09-3503 SC, 2009 U.S. Dist. LEXIS 112852 at *9 (N.D. Cal. Dec. 4, 2009) (Order Granting Defendants' Motion to Dismiss); *Hoang v. Reunion.com Inc.*, No. C-08-3518 MMC, 2010 U.S. Dist. LEXIS 34466 at *5 (N.D. Cal. Mar. 31, 2010) (Order Reconsidering and Vacating in Part December 23, 2008 Order; Denying Defendant's Motion to Dismiss First Amended Complaint [ ]); *Davison Design & Development Inc. v. Riley,* No. 4:11-cv-02970 (N.D. Cal. Nov. 8, 2013) (Order re Motion for Summary Judgment); *Asis Internet Services v. SubscriberBase Inc.*, No. 09-3503 SC, 2010 U.S. Dist. LEXIS 33645, at *41-42 (N.D. Cal. Apr. 1, 2010) (Order Denying Defendants' Motion to Dismiss) (citing to *Altria Group* and holding that Section 17529.5, which is limited to falsity and deception, falls within the exception to preemption).

Endurance also cites an Ohio federal case – *Ferron v. Subscriberbase Holdings Inc.*, No. 2:08-CV-760, 2009 WL 650731, at *3-4 (S.D. Ohio Mar. 11, 2009) – to support its preemption argument, but this case is irrelevant because the Ohio law at issue required that the email's *body* state the sender's name, complete address, and email address, and those specific labeling requirements were preempted. In contrast, Section 17529.5 does not mandate any particular requirements for sending domain names' registration information. Rather, it simply requires that whatever information appears in a Whois query cannot be false or misrepresented.

Endurance's reference to *Silverstein v. Keynetics Inc.*, No. 16-cv-00684-DMR, 2016 U.S. Dist. LEXIS 180174 (N.D. Cal. Dec. 29, 2016) in the MTD at *8 does not help its argument as to

**8**

sending domain names because the facts are distinguishable. The plaintiff argued in the *first* amended complaint that the spams misrepresented the sender's identity because they contained the linkedin.com domain name without LinkedIn Corporation's permission; however, **the plaintiff conceded that the spams actually came from the easily-traceable linkedin.com domain name.** *Id.* at *10. Here, Martin argues that the sending domain names are *not* traceable to the actual senders. Most of the discussion in *Silverstein* relates to allegations in the *second* amended complaint about false proper names in the From Name field, and **the court found that *those* false proper names were immaterial "technical allegations."** *Id.* at *11-14. Here, Martin does not make such claims about the From Names.

Most importantly, **Endurance fails to cite to two California courts of appeal (*Hypertouch* and *Balsam*) that carefully considered *Omega* and *Gordon* and determined that the plaintiffs' claims – similar to Martin's claims – materially violated Section 17529.5 and so their claims were *not* preempted.** Endurance's decision to not discuss (or even cite to) these cases is telling. Nor can Endurance claim ignorance of these cases, because Martin's Complaint cites to both of them, multiple times. *See e.g.* Complaint at ¶¶ 2-4.

After *Hypertouch* analyzed Section 17529.5 and concluded that it does *not* require allegations or proof of reliance and actual damages, *supra*, the court then turned to the CAN-SPAM Act to determine the scope of the preemption/savings clause at 15 U.S.C. § 7707(b)(1). 192 Cal. App. 4th at 824-833. The court thoroughly reviewed the CAN-SPAM Act's statutory language, legislative history and objectives, state laws in effect when the CAN-SPAM Act was enacted, and existing case law. The court then ruled the CAN-SPAM Act does not preempt state anti-spam laws, like Section 17529.5, that prohibit *falsity or deception*, so **plaintiffs need not allege or prove fraud to avoid preemption.** *Id.* Thus, *Hypertouch* sounds the death knell for Endurance's repetitive discussions of whether Martin was "tricked" by the instant spams.

Citing to *Hypertouch*, the court of appeal in *Balsam* subsequently affirmed that the plaintiff's claims were not preempted where the plaintiff could not identify the actual sender by a Whois query of the sending domain names, **even where the bodies of the spams identified the advertisers.** 203 Cal. App. 4th at 1090-91 and 1101 n.16.

**9**

### C. Martin's Claims for Material Section 17529.5(a)(1) Violations are Not Preempted

Section 17529.5(a)(1) prohibits spams that contain or are accompanied by third-parties' domain names without permission of the third parties. Unlike subsections (a)(2) and (a)(3), subsection (a)(1) is not limited to email headers. Complaint at ¶ 45.

#### 1. Many Spams Violate Section 17529.5(a)(1) Because the (Purported) Sending Domain Names Contain Third Parties' Domain Names Without Permission

As described in the Complaint at ¶¶ 46-97, many of the spams at issue contain third parties' domain names in the sending email address field – domain names that appear without the permission of the third parties. The headers of these spams were forged – a separate material violation of Section 17529.5(a)(2), *infra* – because the spams were not actually sent from these domain names, even though it looks like they were.

Examples of these purported sending domain names include: dentphenix.com (owned by a French dental prosthetics vendor), jeweloftheblueridge.com (owned by a North Carolina vineyard), jrmc.org (owned by an Arkansas medical services provider), ringroadcitywalks.com (owned by an Indonesian shopping center), and twinforkspestcontrol.com (owned by a New York pest control services provider). There are dozens more. Martin alleges that *none* of these third parties gave permission for their domain names to appear in the Endurance spams at issue.

#### 2. Many Spams Violate Section 17529.5(a)(1) Because the Full Headers and/or Source Code Show Third Parties' Domain Names Without Permission

As described in the Complaint at ¶¶ 98-107, many of the spams at issue contain third parties' domain names in the full headers and/or source code without their permission. These third parties have policies that prohibit the use of their services/domain names for spamming. These domain names include but are not limited to: amazonaws.com (owned by Amazon.com Inc.), imgur.com (owned by Imgur Inc.), and tinyurl.com (owned by TinyURL LLC).

#### 3. These Spams Materially Violate Section 17529.5(a)(1) and Martin's Claims are Not Preempted

This Court must accept as true Martin's allegations that some of the spams at issue contain dozens of third-parties' domain names without permission. Complaint at ¶¶ 45-109. Endurance's argument in the MTD at *9 that "unauthorized use" does not mean "falsity and deception" falls flat. Even though the actual words "falsity and deception" may not appear in (a)(1), the statutory

language prohibits spams that contain third-party domain name without permission. **This inherently equates to falsity and deception because the inclusion of a domain name implicitly communicates that its owner permitted its use.** Thus, if a third party *did not* give permission for its domain name to appear in a spam, then the spam inherently and falsely asserts that a third party endorses and ratifies Endurance's VSCs *and* Endurance's marketing partners' spamming practices. The falsity is particularly egregious if the spammer forges email headers to make it appear that a spam was sent from a third party's domain name, not least because that act is also defamatory as to the innocent third party (like an Arkansas medical service provider), who is now purportedly a spammer for Endurance without its consent or even knowledge! Regardless, Martin cannot determine who sent these spams, and pursuant to *Hypertouch* and *Balsam*, that is a material violation of Section 17529.5 that is *not* preempted.

Endurance offers no authority that (a)(1) claims are preempted. Endurance misplaces its reliance on *Silverstein,* where the spams actually came from LinkedIn's servers and so there were no (a)(1) violations in the first place. 2016 U.S. Dist. LEXIS 180174 at *9-10. As above, Endurance's repetitive discussion of whether Martin was tricked is irrelevant to preemption.

**D.**    **Martin's Claims for Material Section 17529.5(a)(2) Violations are Not Preempted**

Even though Endurance is advertising in the spams at issue, **Endurance is not the actual sender.** Complaint at ¶¶ 16, 137. Substantive, controlling California case law holds that a domain name used to send spams materially violates Section 17529.5 if it neither identifies the spammer/actual sender (i.e, not Endurance) on its face, nor is readily traceable[5] to the spammer/actual sender using a publicly available online database such as Whois. *Greenberg v. Digital Media Solutions LLC*, 65 Cal. App. 5th 909, 919-920 (1st Dist. 2021)[6]; *Balsam*, 203 Cal. App. 4th at 1101. **Here, Martin cannot identify the actual senders from the sending domain names**, for a variety of reasons, including: a) The spammers engaged "proxy registration services"

---

[5] A "traceable" domain name means that an ordinary recipient could identify the sender by querying a publicly accessible database such as Whois. "Traceable" does *not* mean that only a trained investigator or a determined litigant armed with discovery and subpoena rights could identify the sender. *Balsam*, 203 Cal. App. 4th at 1098.

[6] Endurance also conveniently fails to cite to this (published) portion of *Greenberg*, even though it improperly cites to the *unpublished* part, *infra*.

to insert the proxy services' identities into the Whois database; b) The spammers' identifying information has been redacted from the Whois database; c) The spammers registered their domain names to false names and/or addresses; d) The spammers forged the emails' headers to make it look like the spams were sent from third-parties' domain names or non-existent domain names; or e) The sending domain names exist but for whatever reason, there is no identifying information in the Whois database, not even a reference that data has been redacted. Thus, a person querying the Whois database cannot identify who actually controlled these domain names and sent the spams. Complaint at ¶¶ 11, 29, 31-32, 46-97, 110-127.

Endurance relies heavily on the premise that since the spams identify it as the *advertiser*, it does not matter who *actually sent* the spams. However, ***Balsam*** **went into great detail about the importance of being able to identify a spam's** *actual sender***.** "Allowing commercial e-mailers like Trancos to conceal themselves behind untraceable domain names amplifies the likelihood of Internet fraud and abuse – the very evils for which the Legislature found it necessary to regulate such e-mails when it passed the Anti-spam Law." 203 Cal. App. 4th at 1098-1100. Identifying the spammers is so important because **the actual senders, and not the advertisers (like Endurance), control the lists of email addresses to which the spams are sent.** Indeed, the *Balsam* appellate court affirmed that the untraceable sending domain names violate Section 17529.5 – even where the spams clearly identified the advertiser in the bodies. *Id.* at 1090-91 and 1101 n.16 ("Trancos also points out each e-mail included the advertiser's physical address. However, when the sender and advertiser are unrelated entities, including the advertiser's purported address does not affect whether the sender's identity is falsified or misrepresented"). *See also Greenberg,* 65 Cal. App. 5th at 920 ("We have already rejected [the Advertiser's] claim that it is immune from liability based on the emails' [sending] domain names so long as *it* is identified in the body of an email, and we perceive no other reason it should not be responsible for its marketing partners' misrepresentation of their own identities").

In short, even though the bodies of the spams identify Endurance as the *advertiser*, this Court must accept as true Martin's allegations in the Complaint that Endurance was not the *sender* and that the spams' sending domain names are not readily traceable to the actual senders.

Complaint at ¶¶ 110-127. *Balsam* held that such violations are material, and that claims for such violations are not preempted.

Endurance points out in its MTD at *8-9 that *Andrews v. Conversion Squared Corp.* held that the untraceable sending domain names were "technical violations" and "plaintiffs did not really allege *deception*" (emphasis added) and so the plaintiffs' claims were preempted. No. 8:20-cv-00247-JLS-JDE, 2020 U.S. Dist. LEXIS 129041, at *5-6 (C.D. Cal. May 8, 2020). However, the CAN-SPAM Act preempts state law claims except for the disjunctive "falsity or deception," *supra*, and since *Andrews* never addresses whether the sending domain names were *falsely* registered, it has little applicability here. Notably, *Andrews* came to its conclusion without even referencing *Balsam*, further highlighting that its assessment had nothing to do with *falsity* and is of no use here.

**D.      Martin's Claims for Material Section 17529.5(a)(3) Violations are Not Preempted**

Section 17529.5(a)(3) prohibits Subject Lines that a person knows are likely to mislead a reasonable recipient about a material fact regarding the contents or subject matter of the emails. Complaint at ¶ 128.

***1.   Subject Lines Falsely Asserting Past Relationships are Likely to Mislead a Recipient as to the True Subject Matter of the Spams: New Customer Acquisition***

This Court must accept as true Martin's allegations that **Martin has *no preexisting or current business relationships* with Endurance.** Complaint at ¶¶ 14, 42. And yet, some of the Endurance spams have Subject Lines such as "Complete your Verification [ ]" (*see* Complaint Ex. A), "Login Verification – Verification [ ]" (Complaint Ex. B, H), "Re: Registration Confirmation," and "Welcome to Endurance Auto [ ]" (Complaint Ex. G). *Id.* at ¶¶ 129, 131. ***These Subject Lines assert prior relationships/past dealings* between Martin and Endurance**, for the obvious reason that there can be nothing to complete or verify, and no reason to "welcome" a consumer, if a consumer has not already interacted with Endurance. Endurance knows (or has constructive knowledge) that these Subject Lines are likely to mislead a reasonable recipient by asserting past dealings and prior relationships, when in fact the true subject matter of the spams is new customer acquisition. The Subject Lines are materially misleading, so Martin's claims are not preempted.

### 2. *Martin v. CCH Inc.*, 784 F. Supp. 2d 1000 (N.D. Ill. 2011) *is Irrelevant*

First, as discussed at length, whether Martin was tricked is irrelevant. Thus, when Endurance analyzes *CCH* in its MTD at \*13-14 to conclude that Subject Lines that falsely assert prior relationships "do not rise to the level of fraud," such conclusion is similarly irrelevant. Under California law, **Section 17529.5 violations do not have to rise to the level of *fraud* to avoid preemption,** because the CAN-SPAM Act preempts state law claims except for *falsity* or deception.

Second, although the instant Action is venued in the Northern District of Illinois, California case law is the relevant authority as to interpretation of a California statute.

Third, the Subject Lines in *CCH* ("Buy now pay Feb. 15" and "Offer extended — Buy now pay Feb. 15"), *id.* at \*1001, are distinguishable from those here because they facially do not assert any prior relationships. But the instant Subject Lines use words like "Registration confirmation," "Complete your Verification," and "Welcome to Endurance Auto," all of which *do* refer to prior relationships. Frankly, Martin does not see any falsity or "errors" in the *CCH* spams' Subject Lines at all, but notwithstanding the *CCH* court's attempt at \*1006 to analogize the *Subject Lines* in the *CCH* spams to the *domain names* in the *Gordon* spams, **the instant Subject Lines ("verification," "registration," "welcome") are nothing like those in *CCH* or in *Gordon*,** and the false and misleading statements – asserting that Martin had past dealings with Endurance – are *not* mere "technical allegations."

Fourth, the CCH language at \*1006 to which Endurance refers is non-binding dicta *at best*. While the original complaint alleged that the Subject Lines have "the purpose and effect of making the recipient think the e-mails [are] from someone with whom he has a preexisting relationship," *id.* at 1001, the court states that the plaintiff *abandoned those claims* in the operative first amended complaint, *id.* at 1006. Accordingly, there was **no more dispute or ripe controversy** as to whether Subject Lines that (purportedly) asserted a prior relationship violate Illinois' anti-spam law, and so the *CCH* court should not have made what can only be described as **an improper "advisory opinion"** on these Subject Lines. *See e.g. United States National Bank v. Independent Insurance Agents of America*, 508 U.S. 439, 446 (1993) ("The exercise of judicial power under Art. III of the

**14**

Constitution depends on the existence of a case or controversy," and "a federal court [lacks] the power to render advisory opinions"); *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1205 (7th Cir. 1996) ("Our jurisdiction, however, is limited to present cases and controversies; we refuse to render advisory opinions").

### 3. Subject Lines That are Completely Vague and Ambiguous as to the Subject Matter of the Spams

Some of the Endurance spams have Subject Lines such as "Congratulations! You're eligible for discounted pricing," "No need to worry about repairs again," "Notifications []" (Complaint Ex. J), and "Special delivery! []." This Court must accept as true Martin's allegations in the Complaint at ¶¶ 130, 131 that these Subject Lines could refer to Endurance VSCs, but could just as easily refer to replacement windows, luggage with lifetime warranties, or virtually anything else. Notwithstanding the MSD at *15, Martin facially alleges violations of Section 17529.5(a)(3) – Subject Lines that Endurance knows (or has constructive knowledge) are likely to mislead a reasonable recipient as to the true subject matter of the spams, which is new customer acquisition for Endurance. Endurance provides no authority to the contrary.

### 4. Endurance Improperly Cites to Unpublished California Cases

Endurance cites to *DeWitt v. Foot Locker* and *Greenberg v. Digital Media Solutions* in the MTD at *15 but conveniently fails to mention that *DeWitt* is unpublished and the portion of *Greenberg* discussing Subject Lines to which Endurance refers is also unpublished. California – the jurisdiction where these cases originated – holds that unpublished cases cannot be cited. This Court's "Case Procedures" (https://www.ilnd.uscourts.gov/judge_display.php?LastName= Kocoras) do not address citation of unpublished cases, but even if this Court does not strike these citations on its own motion, these cases have exactly zero binding authority.

## III.  CONCLUSION

As discussed herein: a) The issue of whether Martin "relied" on the Endurance spams is a non-issue, and b) Endurance's *hundreds* of statutory violations as to Martin (and *thousands* as to the putative class) are material and so Martin's claims are not preempted. Although Martin sues Endurance for a single cause of action – violations of Section 17529.5 – there are multiple theories of violations/liability. If this Court finds that Martin has stated a valid, non-preempted claim under

*any* theory, then this Court must deny Endurance's MTD. *Bilek v. Federal Insurance Company*, 8 F.4th 581, 587 (7th Cir. 2021). But, if this Court is inclined to agree with any of Endurance's arguments, then Martin respectfully requests leave to amend.

Respectfully Submitted,

By: */s/ Shaun Bushing*
Shaun Bushing
(Cook County Attorney ID 10046)
AMATORE & BUSHING
1157 W. Newport Avenue, Suite K
Chicago, IL 60657
shaun@amatorebushing.com
*Attorneys for Plaintiffs and the Proposed Class*

By: /s/ *Roy Amatore*
Roy P. Amatore
AMATORE & BUSHING
1157 W. Newport Avenue, Suite K
Chicago, IL 60657
roy@amatorebushing.com

*Attorneys for Plaintiffs and the Proposed Class*

By: */s/ Daniel L. Balsam*
Daniel L. Balsam
(*pro hac vice*)
THE LAW OFFICES OF DANIEL BALSAM
2601C Blanding Ave. #271
Alameda, CA 94501
(415) 869-2873
legal@danbalsam.com

*Attorneys for Plaintiffs and the Proposed Class*

By: */s/ Jacob Harker*
Jacob Harker
(*pro hac vice* admission forthcoming)
LAW OFFICES OF JACOB HARKER
268 Bush Street #3732
San Francisco, CA 94104
(415) 624-7602
jacob@harkercounsel.com

*Attorneys for Plaintiffs and the Proposed Clas*

**16**

## CERTIFICATE OF SERVICE

I, Roy P. Amatore, hereby certify that on **March 12, 2026**, I electronically filed the foregoing

**Plaintiffs' Opposition to Defendant's Motion to Dismiss** with the Clerk of the Court using the

**CM/ECF system**, which will send notification of such filing to all counsel of record who are

registered CM/ECF users.


By: /s/ *Roy Amatore*
Roy P. Amatore
AMATORE & BUSHING
1157 W. Newport Avenue, Suite K
Chicago, IL 60657
roy@amatorebushing.com


*Attorneys for Plaintiffs and the Proposed Class*

17