**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| EVON MARTIN, an individual; DORIAN MEDINA, an individual; SHIRITA MOORE, an individual; KEYA THORNABAR, an individual; CHERYL WESTON; an individual, and on behalf of all others similarly situated, | ) | |
| Plaintiffs, | ) | |
| v. | ) | 26 C 1334 |
| ENDURANCE WARRANTY SERVICES, LLC, an Illinois limited liability company; and DOES 1-1,000, | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

In the modern inbox, spam emails are less a form of communication than a force of nature. They arrive unbidden, multiply with astonishing persistence, and seem wholly indifferent to whether anyone wishes to receive them. Over the course of a year, Plaintiffs Evon Martin, Dorian Medina, Shirita Moore, Jeya Thornabar, and Cheryl Weston collectively received at least 872 commercial advertising emails promoting Defendant Endurance Warranty Services, LLC ("Endurance") and its products and services. Most spam recipients meet the onslaught of emails with resignation, dispatching the messages to the trash folder and accepting them as a routine cost of

participating in the digital world. Plaintiffs, however, chose a different path. They believe Endurance's conduct crossed a legal line, and they brought this putative class action under California Business & Professions Code § 17529.5, seeking redress in the form of liquidated damages for each Endurance email received, as well as attorney's fees and costs.

Before the Court is Endurance's motion to dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(b)(6), in which Endurance argues the claims are preempted by the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. §§ 7701 *et seq*. For the reasons that follow, Endurance's motion is granted in part and denied in part.

**BACKGROUND**

The following facts are taken from the complaint and presumed true for purposes of this motion. All reasonable inferences are drawn in Plaintiffs' favor.

Plaintiffs are California residents. Endurance is an Illinois limited liability company with its principal place of business in Northbrook, Illinois. Endurance advertises its websites and its vehicle service contracts ("VSCs") in spam emails targeted at California.[1] According to Plaintiffs, Endurance is a professional "spamvertiser."

---

[1] Plaintiff also assert claims against presently-unknown defendants for aiding and abetting Endurance's alleged violations of Section 17529.5, and/or conspiring to aid and abet violations of Section 17529.5: Defendant Does 1–100 are alleged to be directors, owners, officers, employees, or independent contractors of Endurance, or predecessors, successors, parents, subsidiaries, or sister companies of Endurance; Defendant Does 101–700 are alleged to be the spammers who

Over the course of a year, Plaintiffs collectively received at least 872 "unsolicited commercial email advertisements"[2] promoting Endurance, its websites, its services, and its VSCs. Plaintiffs did not consent to receive emails from Endurance or its marketing agents, and none of the Plaintiffs had or have a preexisting or current business relationship with Endurance.

Plaintiffs allege Endurance's emails are unlawful and violate Section 17529.5 because they use third-party domain names without permission, use misrepresented header[3] information, and supply deceptive subject lines. For example, Plaintiffs received emails from:

- EnduranceAuto <contact_support.uwx@e.iwoxoq.kaijeaw.com>;
- """"""""""""""""""""ENDURANCE"""""""""""""""""""""" <contact_support.pzq@mail.jrmc.org>;
- """"""""""EnduranceAuto """""""<contact_support.fdw@e.edijix.vulki($)t.com>;
- """"""""""""""""""""EnduranceAuto"""""""""""""""""""""" <contact_support.rxm@atelierstore.fr>;
- """""""""""""""""""" @vehicule Service"""""""""""""""" <contact_support.jsn@ee.guncomvyio.adeslasdental.es>;
- "Endurance Auto Warranty" <info@thehealthncare.com>;

actually sent the emails at issue; and Defendant Does 701–900 are alleged to be the spam networks who conspired with the spammers to aid and abet Endurance's advertising in the spam emails.

[2] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(o).

[3] According to the complaint, "[e]mail headers include the sending email address field, which is comprised of a username (the part before the @ sign) and the domain name (the part after the @ sign, ending with .com, .net," etc. Dkt. # 1-1, ¶ 112. Email headers include the From, To, CC, Subject, and Date fields.

- “Endurance Auto” <service@autowhales.com>;
- Endurance Auto Warranty <info@refinancerechargers.com>;
- Endurance Auto Protection <info@buddharm.com>;
- EnduranceAuto <svvlrippzro@nart.dqfzbsdjthjap.us>.

*See* Dkt. # 25. Subject lines included:

- “Complete your Verification hakw”
- “Registration Confirmation unos”
- “Registration Confirmation edos”
- “WelcomTo EnduranceAuto 2024 medf”
- “notifications”
- “Drive Worry-Free: Auto Protection Plans”
- “Endurance vehicle protection plan”
- “Pay $0 for auto repairs Evon”
- “You could save thousands on auto repair – see if you qualify today!”
- “marieward6900 you’re eligible for discounted pricing you could save thousandson auto repair”

*See id.*

Plaintiffs do not contend that Endurance itself sent the spam emails; rather, Plaintiffs allege that Endurance “engaged spam networks” to send the emails. Plaintiffs contend that Endurance is liable for the spammers’ conduct.

The complaint lists over thirty third-party domain names and alleges the headers of the emails were forged to make it look as if the emails were sent from those domain names, even though they were not, and those third parties prohibit the use of their domain names for spamming. Other emails had domain names of third parties that specifically prohibit the use of their services/domain name for spamming appear in the full headers and/or source code.

Some of the emails at issue were sent from domain names that were proxy-registered, or domain names from which the spammers' identifying information was redacted for privacy. Others were sent from domain names that are registered to fake names/entities, claiming fake addresses or addresses at commercial mail receiving agencies. Some of the headers of the emails at issue were forged to make it appear that the emails were sent from certain garbled and nonsensical domain names, when in fact those purported domain names were never registered or were not registered when the emails were sent.

Based on the foregoing, Plaintiffs bring this action under Section 17529.5 on behalf of a putative class defined as:

> All California consumers and businesses who are current clients of Plaintiffs' counsel:
>
> - Who received at their California email addresses unsolicited commercial email advertisements advertising ENDURANCE, its websites, its services, and its VSCs; and
>
> - The emails were received: a) Within one year prior to filing this Action on October 1, 2025 (i.e. since October 1, 2024); b) Between August 15, 2024 and September 30, 2024 but ENDURANCE agreed to extend the statute of limitations through October 1, 2025; and/or c) More than one year prior to filing the Complaint, but the statute of limitations begins to run with the final act in ENDURANCE's ongoing tortious conduct (which *was* within one year prior to filing the Complaint); and
>
> - The emails: a) Include third parties' domain names without permission of the third parties; b) Contain falsified, misrepresented, and/or forged information in or accompanying the email headers; and/or c) Contain Subject Lines that ENDURANCE knows (or has

> constructive knowledge) are likely to mislead a reasonable recipient as to the contents or true subject matter of the emails.

Dkt. # 1-1, ¶ 154.

Endurance moves to dismiss the complaint in its entirety under Rule 12(b)(6), arguing that Plaintiffs' Section 17529.5 claims are preempted by the CAN-SPAM Act.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotes omitted). "This means that the complaint must offer factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Farhan v. 2715 NMA LLC*, 161 F.4th 475, 482 (7th Cir. 2025) (cleaned up). The Court will accept "well-pleaded facts in the complaint as true and draw reasonable inferences in plaintiffs' favor—but [will] not presume the truth of legal conclusions and conclusory allegations." *Cielak v. Nicolet Union High Sch. Dist.*, 112 F.4th 472, 475 (7th Cir. 2024). For these reasons, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Orr v. Shicker*, 147 F.4th 734, 741 (7th Cir. 2025) (quoting *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021)).

## DISCUSSION

Under Cal. Bus. & Prof. Code § 17529.5, "[i]t is unlawful for any person or entity to advertise in a commercial e-mail advertisement either sent from California or sent to a California electronic mail address under any of the following circumstances:

> (1) The e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party.
>
> (2) The e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information. This paragraph does not apply to truthful information used by a third party who has been lawfully authorized by the advertiser to use that information.
>
> (3) The e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message.

Cal. Bus. & Prof. Code § 17529.5(a). Plaintiffs allege that Endurance's marketing emails violated each of the three subsections of Section 17529.5(a). Endurance argues the claims, as pleaded, are preempted by the CAN-SPAM Act.

The CAN-SPAM Act was enacted in response to mounting concerns associated with the growth of spam emails and provides a code of conduct to regulate commercial e-mail messaging practices. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1047–48 (9th Cir. 2009). The statute supersedes any state law "that expressly regulates the use of electronic mail to send commercial messages, except to the extent that any such statute, regulation, or rule prohibits *falsity or deception* in any portion of a commercial electronic mail message or information attached thereto." 15 U.S.C. § 7707(b)(1) (emphasis added). So, while the CAN-SPAM Act broadly preempts state regulation of

commercial emails, it also carves out an exception for "state laws that proscribe 'falsity or deception' in commercial e-mail communications." *Gordon*, 575 F.3d at 1061. State laws that proscribe falsity or deception refer to those that "extend traditional tort theories." *Id.* at 1063.

One can "escape CAN-SPAM preemption," however, if "'the false or deceptive information in a commercial email [is] material.'" *Rodriguez v. Endurance Warranty Servs., L.L.C.*, 2026 WL 1110696, at *3 (S.D. Cal. 2026) (quoting *Silverstein v. Keynetics Inc.*, 192 F. Supp. 3d 1045, 1048 (N.D. Cal. 2016), *aff'd*, 727 F. App'x 244 (9th Cir. 2018)). A state law claim based on mere technical and immaterial allegations of header deficiencies would be preempted. *Gordon*, 575 F.3d at 1064; *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *2 (N.D. Cal. 2010).

## I. Section 17529.5(a)(1) Claim

Section 17529.5(a)(1) is violated when "[t]he e-mail advertisement contains or is accompanied by a third-party's domain name without the permission of the third party." Cal. Bus. & Prof. Code § 17529.5(a)(1). Plaintiffs allege that Section 17529.5(a)(1) was violated here because many of the domain names Endurance used were registered to real third-party entities[4], and those third parties did not give Endurance permission to use their domain names. Endurance argues this claim is

[4] To name a few: anuperona.com (a Bengali-language website that promotes short inspirational stories), alaena-cosmetique.com (a French cosmetics company), infopraca.pl (a Polish job search website), kavitatrading.com (a company that sells insulation products in India), and lukedraily.com (a general contractor located in Kansas City).

preempted by the CAN-SPAM Act because Section 17529.5(a)(1) on its face does not prohibit "falsity or deception"; rather, it prohibits the *unauthorized* use of a domain name. In Plaintiffs' view, however, the use of a third party's domain name without permission "inherently equates to falsity and deception because the inclusion of a domain name implicitly communicates that its owner permitted its use." Dkt. # 19, at 11. That may be; however, the Court agrees with Endurance that Plaintiff's Section 17529.5(a)(1) allegations do not rise to the level of *material* falsity or deception and are thus preempted.

Plaintiffs misapprehend the point Endurance is trying to make when it points out that there are no allegations that Plaintiffs saw the domain names, recognized them, or believed the emails were sent by a person or entity that they knew or recognized such that they were tricked or misled by the domain names' inclusion in the emails. Endurance is not arguing that Plaintiffs must allege they were tricked or misled to escape preemption; rather, Endurance is using the fact that Plaintiffs were not tricked or misled to emphasize the non-materiality of the unauthorized use of third-party domain names.

On its own, Endurance's unauthorized use of third-party domain names does not establish that "the use of the domains was materially false or misleading to the parties receiving the emails. It, instead, indicates a technical violation that does not overcome the preemption bar" because "[w]ithout more, the simple [unauthorized] use of a third-party domain name alone does not rise to the level of traditionally tortious conduct."

*Rodriguez*, 2026 WL 1110696, at *3 (cleaned up) (citations omitted). Plaintiff's Section 17529.5(a)(1) claim, as pleaded, is preempted by the CAN-SPAM Act.

**II. Section 17529.5(a)(2) Claim**

Section 17529.5(a)(2) is violated when "[t]he e-mail advertisement contains or is accompanied by falsified, misrepresented, or forged header information." Cal. Bus. & Prof. Code § 17529.5(a)(2). Plaintiffs allege that the emails they received contain "misrepresented" header information because the domain names in the originating email addresses either (1) do not identify the entity who sent the email and are not readily traceable to the sender, or (2) contain "forged" header information to the extent they contain a third parties' domain name. Endurance again argues this claim is preempted by the CAN-SPAM Act because Plaintiffs "fail to allege material falsity or deception—they do not allege they saw or were deceived by the domain names and, even if they did, the domain names are immaterial since the emails are full of methods to identify and contact Endurance." Dkt. # 12, at 3.

Plaintiffs urge the Court to follow the holdings of *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083 (2012). In *Balsam*, the main defendant was not the actual advertiser but instead a third-party advertising business that advertisers paid to send offers to email addresses the third-party had acquired. *Id.* at 1088–89. The defendant used domain names that did not represent a real company and could not be readily traced back to the defendant. *Id.* at 1096. Additionally, "[i]t was undisputed [the defendant] intentionally used only privately registered, meaningless domain names in order to prevent e-mail

recipients from being able to identify it as the sender, or to contact it except by sending a blind reply e-mail to an address the sender would have no way of linking to [the defendant]." *Id.* Based on that, the court held that "header information in a commercial e-mail is falsified or misrepresented for purposes of Section 17529.5(a)(2) when it uses a sender domain name that *neither* identifies the actual sender on its face *nor* is readily traceable to the sender using a publicly available online database such as WHOIS." *Id.* at 1101–02 (emphasis in original).

The *Balsam* court recognized that "state law claims based on no more than *immaterial* or *nondeceptive* inaccuracies or omissions in commercial e-mails are preempted." *Id.* at 1102–03 (emphasis in original). However, the court concluded that the defendant's "deliberate use of randomly chosen, untraceable domain names on the 'From' line of the subject e-mails for the stated purpose of concealing its role in sending them does involve deception as to a material matter—the sender's identity—as well as an element of wrongful conduct." *Id.* at 1103.

Importantly, though, in reaching this conclusion, the court pointed out that the defendant did not make any argument to the contrary. Additionally, the *Balsam* decision explicitly "express[ed] no judgment about other circumstances in which (1) header information might be falsified or misrepresented for purposes of the statute, or (2) *the presence of other information identifying the sender of the body of the email could affect liability under the statute.*" *Id.* at 1101 n.17 (emphasis added).

Two years after *Balsam* was decided, the California Court of Appeal in *Rosolowski v. Guthy–Renker LLC* held that "a header line does not misrepresent the identity of the sender merely because it does not identify the official name of the entity which sent the e-mail, or merely because it does not identify an entity whose domain name is traceable via a database such as WHOIS, *provided* the sender's identity is readily ascertainable from the body of e-mail." 230 Cal. App. 4th 1403, 1416 (2014) (emphasis in original); s*ee also Wagner v. Spire Vision LLC*, 2015 WL 876514, at *4–5 (N.D. Cal. 2015) (granting summary judgment on a Section 17529.5(a)(2) claim because the emails in question "provided a hyperlink to the advertiser's website, an unsubscribe link, and a mailing address for the sender. The sender's identity could thus be readily ascertained from the bodies of the emails.").

Endurance argues *Balsam* is irrelevant to its argument that the CAN-SPAM Act, as applied to Plaintiffs' specific allegations, preempts their Section 17529.5(a)(2) claim. Endurance suggests *Andrews v. Conversion Squared Corp.*, 2020 WL 3978063 (C.D. Cal. 2020), is dispositive of Plaintiffs' Section 17529.5(a)(2) claim. In *Andrews*, the court noted that the plaintiffs did not allege they were deceived as to the nature of the emails, concluding that "it is difficult to see how Plaintiff could allege deception given that, as in *Silverstein*, the combination of the sender name and the subject line make apparent to any reasonable person the exact nature of the email." *Id.* at *2.

Similarly, the court in *Rodriguez*, relying on *Silverstein* and *Andrews*, concluded the plaintiff's Section17529.5(a)(2) claim was preempted because, like in *Andrews*, the

"header information of Defendant's marketing emails would only indicate that the sender was an unknown person, while the subject line makes clear that the email is an advertisement," and the plaintiff "d[id] not clarify how the header information within that context could plausibly deceive a reasonable person." 2026 WL 1110696, at *7. Thus, "rather than alleging material deception, Plaintiff allege[d] a variety of forms of missing information, which would not escape preemption under the CAN-SPAM Act." *Id.*

While the same can be said for most of the sample Endurance emails attached to the complaint, it cannot be said for all of them. For example, Plaintiff Medina received an email "From: """""""""""" @vehicule Service"""""""""" <contact_support.jsn@ee.guncomvyio.adeslasdental.es>" with the subject line "notifications." Dkt. # 25, at 27. The combination of the sender name and the subject line in that email do not make apparent "the exact nature of the email." Additionally, Endurance's name does not appear anywhere in the body of the email. True, "[t]his is not a situation where, *e.g.*, the recipient receives an e-mail indicating the sender was an actual person known to the recipient, but, in fact, was sent by an advertiser." *Member Source*, 2010 WL 1610066, at *4 (citing *Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *6 (2010)). Even so, with this kind of email, Endurance's argument that "any alleged 'falsity' or 'deception' due to the presence of third-party domain names is immaterial given that the emails are 'chock full of methods' to identify, locate, or respond to Endurance," Dkt. # 12, at 13, rings slightly hollow. The Court is not

prepared to conclude at this early stage that Plaintiffs' Section 17529.5(a)(2) allegations merely amount to the kind of "technical allegations" that would be preempted by the CAN-SPAM Act and so Endurance's motion to dismiss the Section 17529.5(a)(2) claim is denied.[5]

## III. <u>Section 17529.5(a)(3) Claim</u>

Section 17529.5(a)(3) is violated when the "e-mail advertisement has a subject line that a person knows would be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact regarding the contents or subject matter of the message." Cal. Bus. & Prof. Code § 17529.5(a)(3). This section thus turns on "whether the subject line might in fact lead a reasonable person to expect something materially different than the message's actual content or subject matter." *Asis Internet Servs. v. Subscriberbase Inc.*, 2010 WL 1267763, at *5 (N.D. Cal. 2010).

[5] It's worth noting that Plaintiffs repeatedly emphasize throughout their filings that they are expressly alleging that Endurance did *not* send the emails and is instead liable for the conduct of the presently-unknown defendants who *did* send the emails. This allegation distinguishes the instant case from much of Endurance's cited authority, in which the defendants were alleged to be the actual senders of the spam emails. Endurance argues the *Balsam* court erroneously held the defendant liable for sending the emails at issue, even though the statute only imposes liability on an advertiser, and not the sender. Endurance points to two federal district court cases that purport to correct this error. *See Blanchard v. Fluent, Inc.*, 2017 WL 4224768, at *2–3 (N.D. Cal. 2017) (concluding after extensive discussion that Section 17529.5 does not extend liability to senders, unless the sender is also advertising in the email); *Bank v. Hydra Group LLC*, 2019 WL 1434081, at *7–9 (E.D.N.Y. 2019) (following *Blanchard* and finding the plaintiff's conclusion that the statute covers "senders" who are not also "advertisers" is "not supported by the plain text of the statute, legislative history or case law"); *but see also Greenberg v. Digital Media Sols., LLC*, 65 Cal. App. 5th 909, 920–21 n.8 (2021) (recognizing there is conflicting authority on whether spam recipients can state a claim under Section 17529.5(a)(2) against entities that send spam but are not the actual advertisers, but declining to resolve the issue). This could impact the viability of some of Plaintiffs' claims, and the parties should be prepared to fully address the issue at a later stage of the case.

Plaintiffs allege the emails at issue contain materially misleading subject lines because they (1) imply or assert "past dealings and prior relationships" between Plaintiffs and Endurance, or (2) are "so vague and ambiguous" that they could refer to anything when the "true subject matter" of the emails is selling Endurance's products. *See* Dkt. # 1-1, ¶¶ 129–31.

In the Court's view, there is nothing materially misleading about subject lines such as "Endurance vehicle protection plan" or "You could save thousands on auto repair – see if you qualify today!", and therefore a Section 17529.5(a)(3) claim based on such subject lines would be preempted. However, Plaintiffs claims involving subject lines such as "Registration Confirmation," "Login Verification," or "Email verification" carry more weight. These are not subject lines that are merely "incomplete" or provide "less than comprehensive information," *see Gordon*, 575 F.3d at 1064, as Endurance argues. They suggest that some action was taken by the recipient (or someone trying to pose as the recipient). A reasonable trier of fact could conclude that a recipient of emails with these subject lines could likely be deceived. For example, an individual receiving such an email might believe from the subject line that a hacker is trying to gain access to one of their accounts or trying to create an account without that person's authorization, only to open the email and find that it is nothing more than an advertisement. The Court declines to conclude at this stage that Plaintiffs' Section 17529.5(a)(3) claim is preempted.

## CONCLUSION

For the foregoing reasons, Endurance's motion to dismiss [11] is granted in part and denied in part as set forth above. A telephonic status hearing is set for October 13, 2026, at 10:10 a.m.

It is so ordered.

Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Date: August 27, 2026